Reese, J.
delivered the opinion of the court.
In 1825, Andrew Campbell purchased of Searcy D. Sharp a tract of land, for the price of four thousand three hundred and two dollars; and to secure the price, gave to Sharp his three individual notes, each amounting to upwards of $1,400, and severally due the 1st of. May, 1836, and the 1st of January, 1837 and 1838. Sharp gave his title bond to convey the land when the consideration should be paid. Campbell paid and took up the two notes first due, and made a payment-upon the third note, which had been assigned by Sharp to B. S. Tappan & Co. Sharp made a deed to Campbell for the land, and duly acknowledged it before the Clerk of the County Court of Williamson, where the land lies, and enclosing it in an envelope, upon which he endorsed, that the deed was to be given up to Campbell upon the order of Tappan & Co. he deposited it in the vault of the bank.
In May, 1839, E. T. Collins, .a member of the firm of A n-drew Campbell & Co., drew a draft or bill of exchange in the name of Andrew Campbell & Co. upon Allen, Ashurst & Co.' of New Orleans, for $1,172, payable to B. S. Tappan & Co., being the balance due for the third note of Campbell to Sharp, for the price of the land. • The bill of exchange was drawn at 6 months, and dated La Grange, and is endorsed by B. S. Tappan & Co. and by E. Si. Tappan. Whether this bill of exchange was taken by B. S. Tappan & Co- in payment of the note given to Sharp, and assigned by him to B. S. Tappan & Co„ and the note itself taken up by Collins, the partner of Campbell, or whether it was taken up as a mode or means of *490 payment, does not appear by any direct and express proof in the record.
About the 1st of January following (1839) Campbell, by deed, conveyed the land in question in fee to the defendant Connor, to secure the payment of the debts of certain of his own creditors, with power to sell the same. Connor, the trustee in said deed, did sell the same, and the defendant, John Johnson, became the purchaser of the same at the price of $4,-800, and received a deed therefor. The complainant became the holder of the bill of exchange above referred to, and brought suit thereon against A. Campbell & Co. and B. S. Tappan & Co., the same not having been paid by Allen, Ashurst & Co., and obtained judgment against said A. Campbell & Co., and B. S. Tappan & Co., satisfaction of which he has not been able to procure by executions. The complainant has filed this bill to subject the said land to the satisfaction of his demand, upon the ground, that the bill of exchange, which has come into his hands was a collateral security for the note, and that the note was a part of the consideration for the land.
The right of the complainant to the relief sought by his bill, will depend upon two questions; either of which being determined against him, must reject his claim. The one is a question of fact, the other of law. The question of fact is, was the note paid by the bill of exchange? If not, the question of law is, can the holder of the collateral security be regarded as the assig-nee of the note, so as to assert and enforce the vendor’s lien against the land?
1st. As to the fact, it is contended for the complainant, that when the proof does not show that the new security was taken in payment of the old, the contrary will be intended, and it will be held that the new security was taken only as the means of payment. Let this principle be conceded: we proceed to inquire whether the facts and circumstances in this case are not sufficient to rebut such presumption. In the first place, then, the note is not produced, nor proved to be in existence, the plaintiff having prayed in his bill that it might be produced, and having alledged that it was among the papers of B. S. Tappan & Co. Campbell, indeed, as a witness, says it is not *491 in his possession; that he does not know whether the bill of exchange was taken as payment or as means of payment; that his partner, Collins, and not he, attended to the matter, and that he does not know whether Collins took up the note or not. It must be remembered that Campbell was individually liable on the note, and that his partner in his absence attended to this matter, and signed the bill of exchange in the firm name. Is it not extremely improbable that a partner, acting in the absence of his co-partner, would give a security in the name of the firm* binding himself for the individual note of his co-partner, and would not at the time take up sueh-individual note of his partner, but leave it, as well as the bill of exchange, in the hands of the creditor? Again-: The entry upon the books of Tappan & Co. by B. S. Tappan himself, and in the presence of Collins, as proved by Crouch, makes the impression that the parties understood the .transaction as a payment of the note.
These facts make it probable, and induce us to believe, that the note was in fact paid and taken up by the bill of exchange, but if this were otherwise, can the holder of a collateral security be regarded as the assignee of the note itself, to which the security is collateral, and thus enforce the vendor’s lien upon the note against the land? This court in the case of Graham vs. McGamphdl, Meigs’ Rep., determined that where the title is reserved by the vendor, or where he takes a mortgage to secure the payment of the consideration, the assignee of the vendor’s note for the consideration, has a right in equity to subject the land for the payment of the same; but this case seeks to go further, and to invest the holder of a collateral security with the same right.
This we think cannot be done. No authority upon the point has been produced. The parties to such collateral security, do not, in point of fact, negotiate upon the credit of the vendor’s •lien. Many such collateral securities might not have upon them the name of the vendor at all, and might spring out of distinct and independent transactions. There might be several collateral securities of different sorts, given to meet the payment of the vendor’s note, and these, again, in the course of their nego *492 tiations, might have their own several collaterals, and so on in an almost endless series.
To hold that the fact of the security being collateral, primarily or secondarily, or more remotely, to the vendor’s note for the price of the land, constitutes an equitable priority, authorizing any of said parties, upon the ground of it, to resort to the vendor’s lien upon the land, would introduce much confusion and great practical inconvenience.
We are not aware of any authority for so holding, and upon grounds of public policy, we should regret if any general principle or just analogy compelled us so to hold.
But we think there is none such. We, therefore, reverse the decree, and dismiss the bill, and the complainant and defendant, Johnson, shall each pay half of the costs.